[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The only issue in this case was whether the Bulk Sales Act applied or not. While the parties have argued vigorously about who bears the burden of proof, the court finds it unnecessary to decide that issue since the facts are clear and convincing and the court has no difficulty finding the necessary facts proven even if it assigns the burden of proof to the defendant.
The court finds the following facts:
1. The plaintiff, R.J.B. Contracting, Inc. ("R.J.B."), is a Connecticut corporation engaged in the building trades.
2. Coffin Adams Enterprises, Inc. ("Coffin 
Adams"), is a Connecticut corporation presently engaged in operating a foreign care repair facility.
3. On or before July 27, 1990, German Auto, Inc. ("German Auto"), was a Connecticut corporation engaged in operating a foreign car repair facility.
4. On July 27, 1990, German Auto sold substantially all of its business assets to Coffin Adams for the price of $650,000.00, which was paid by Coffin Adams to German Auto pursuant to their agreement.
4a. Prior to July 27, 1990, R.J.B. held an outstanding judgment against German Auto in the principal unpaid balance of $18,805.26.
6. On July 27, 1990, Coffin Adams had notice that R.J.B. had an outstanding judgment against German Auto in some disputed amount.
7. German Auto failed to give advance notice to R.J.B. of its sale of substantially all its business assets to Coffin Adams.
8. On July 27, 1990 and for a time prior thereto, German Auto CT Page 5086 generated approximately 60 per cent of its gross revenue from providing repair services to owners of used foreign automobiles.
9. On July 27, 1990 and for a time prior thereto, German Auto derived approximately 40 per cent of its income from the sale of automobile parts to car owners primarily in connection with the provision of repair services to said automobiles.
10. At July 27, 1990 and for a time prior thereto, German Auto obtained upwards of 85 per cent of the parts necessary to effect repairs to its customers' automobiles by obtaining those parts from automobile parts supply houses at the time said repairs were rendered.
11. At July 27, 1990, and for a time prior thereto, German Auto was able to obtain no more than 15 per cent of the automobile component parts that it required in the ordinary course of its repair business from its inventory.
13. As of July 27, 1990 and for a period of time prior thereto, German Auto made only a small, incidental and/or insignificant number of over-the-counter sales of parts or accessories.
Article 6 of the Uniform Commercial Code governs bulk transfers. The operative portion of the code is, 42a-6-102 Conn. Gen. Stat.:
 "Bulk transfer"; transfer of equipment; enterprises subject to this article; bulk transfers subject to this article. (1) A `bulk transfer' is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory as defined in section 42a-9-109 of an enterprise subject to this article.
(2) . . .
 (3) The enterprises subject to this article are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell."
The court finds that the principal business of German auto was the repair of cars, usually foreign cars. Based on the evidence before the court, the court concluded that its principal business was not the sale of merchandise from stock CT Page 5087 and that hence the business was not an enterprise governed by the bulk sales act. In reaching this conclusion the court relied heavily on the testimony of Mrs. Nancy Zacchera, who had previously worked for German Auto for several years and was now employed by the defendant. The court found her to be a reliable, truthful and thoroughly credible witness. The court must therefore find for the defendant.
Judgment for the defendant.
WILLIAM M. SHAUGHNESSY, JR. JUDGE, SUPERIOR COURT